Esau AWABDY, Plaintiff–Appellant,

v.

CITY OF ADELANTO; Scott Burnell; Ted Hartz; Richard Althouse, Michael Sakamoto, Does I–X, Inclusive, Defendants–Appellees.

No. 02–57118.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 4, 2004.*

Filed May 20, 2004.

---

\* In accordance with the parties' stipulation, the panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a).

Stanley W. Hodge, Victorville, CA, for the plaintiff-appellant.

Marguerite P. Battersby, Harry C. Carpelan, San Bernardino, CA, for the defendants-appellees.

Before: REINHARDT, THOMPSON, and WARDLAW, Circuit Judges.

REINHARDT, Circuit Judge:

Two weeks before the 2000 election, Esau Awabdy suffered a significant setback in his campaign for another term on the City Council of Adelanto when the San Bernardino County District Attorney charged him with embezzling public funds. Awabdy pled not guilty prior to election day and, over one year later, the Superior Court granted a motion by a deputy District Attorney to dismiss the charge in the interests of justice. By then, however, Awabdy was no longer serving on the City Council, for he had been soundly defeated at the polls.

After the charge was dismissed, Awabdy filed this action under 42 U.S.C. § 1983. Awabdy alleges that the criminal proceedings were initiated on the basis of false accusations and conspiratorial conduct by several Adelanto city officials who sought to deprive him of his First, Thirteenth, and Fourteenth Amendment rights. The district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291, and we reverse as to all claims with the exception of those relating to the Thirteenth Amendment, which we affirm.

# I. BACKGROUND

In this appeal of the district court's dismissal under Rule 12(b)(6), we assume that the factual allegations of Awabdy's complaint are true and construe them in the light most favorable to him. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001). The facts, so construed, are as follows.

As a member of the Adelanto City Council, Awabdy raised questions about the expenditure of municipal funds and took positions that placed him in conflict with other officials in the San Bernardino County municipality. A conspiracy formed to use unconstitutional means to defeat him when he ran for reelection. It included Ted Hartz and Richard Althouse, also city councilmembers; Scott Burnell, a police officer; and Michael Sakamoto, the city manager (collectively "the defendants"). In addition to their political disagreements, another motive underlay the conspirators' unconstitutional scheme for bringing about Awabdy's removal from office. They made it known that they intended to "get" him because he was of "Arabic extraction."

On the basis of the conspirators' false accusations that Awabdy had embezzled public funds, the San Bernardino County District Attorney's office commenced an investigation in May 1999. On October 24, 2000, just two weeks before the November election, the District Attorney charged Awabdy with embezzling public funds in violation of Cal.Penal Code § 504.[1] Awabdy pled not guilty on October 31 and was released on his own recognizance. The

---

1. Although the record does not contain details about the embezzlement charge, newspaper accounts provide some information. Awabdy was accused of double-billing. He allegedly obtained $350 from the Southern California Associated Governments and the San Bernardino Associated Governments for mileage, meals, and lodging expenses that he incurred while attending meetings of these organizations. Subsequently, he allegedly secured reimbursements from the City of Adelanto for the same expenses. Richard Brooks, *Councilman Charged with Embezzlement*, Press Enterprise (Riverside, CA), Oct. 25, 2000, at B3; *Briefs*, Press Enterprise, Nov. 1, 2000, at B3.

election occurred a week later. Awabdy received fewer votes than any of the thirteen other candidates who were running for the three at-large seats on the Adelanto City Council. In contrast, the two other incumbents were reelected.[2]

In December 2000, Awabdy was held to answer on the embezzlement charge following a preliminary hearing. Over one year later, the state Superior Court granted a motion by a deputy District Attorney to dismiss the criminal charge against Awabdy in the interests of justice, pursuant to Cal.Penal Code § 1385. Awabdy commenced this action in May 2002.

## II. ANALYSIS

We review *de novo* the district court's order granting the defendants' Rule 12(b)(6) motion. *Zimmerman*, 255 F.3d at 737. Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that Awabdy can prove no set of facts consistent with the allegations set forth in his complaint that would entitle him to relief. *Id.; Am. Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir.2002).

We reverse and remand for two reasons. First, the district court misinterpreted our cases regarding the constitutional tort of malicious prosecution under § 1983. Second, it overlooked Awabdy's direct claims under the First and Fourteenth Amendment, which, although they are closely related to the malicious prosecution claim in a number of respects, require independent consideration.

### A. Malicious Prosecution under § 1983

■ A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir.2002).

The district court concluded that the allegations in Awabdy's complaint did not meet the lack-of-probable-cause and intent-to-deprive requirements. We disagree.

### 1. Lack of Probable Cause

The district court determined that it was beyond doubt that Awabdy could prove no set of facts consistent with the allegations in his complaint that would establish that he was prosecuted without probable cause. Its reason was that the Superior Court held him to answer on the embezzlement charge after a preliminary hearing. We look to California law to determine the legal effect of the state court's action because we have incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983. *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987); *see also Heck v. Humphrey*, 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

**2. *Decision 2000 Results: San Bernardino*** **County**, L.A. Times, Nov. 9, 2000 at A53.

■ In California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes *prima facie*—but not *conclusive*—evidence of probable cause. *See Holliday v. Holliday*, 123 Cal. 26, 55 P. 703, 704 (1898); *Diemer v. Herber*, 75 Cal. 287, 17 P. 205, 206–07 (1888); *Scannell v. County of Riverside*, 152 Cal.App.3d 596, 199 Cal. Rptr. 644, 651–53 (1984); *De La Riva v. Owl Drug Co.*, 253 Cal.App.2d 593, 61 Cal. Rptr. 291, 293–95 (1967); *Garfield v. Peoples Finance & Thrift Co.*, 24 Cal.App.2d 144, 74 P.2d 1061, 1063 (1937); *Foster v. Banks*, 112 Cal.App. 622, 297 P. 106, 107 (1931); 5 Witkin, Summary of Cal. Law, *Torts* § 427 (9th ed.1998) (holding defendant to answer is *prima facie* evidence of probable cause; judgment of conviction is conclusive evidence).

■ Awabdy contends that the district court erred because it did not afford him an opportunity to rebut, or overcome, the *prima facie* finding. We agree. Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *See, e.g., Williams v. Hartford Ins. Co.*, 147 Cal. App.3d 893, 195 Cal.Rptr. 448, 452 (1983); *Rupp v. Summerfield*, 161 Cal.App.2d 657, 326 P.2d 912, 915–16 (1958); *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir.1997). *See also* Restatement (Second) of Torts § 663; H.D. Warren, Annotation, *Malicious prosecution: commitment, binding over, or holding for trial by examining magistrate or commissioner as evidence of probable cause*, 68 A.L.R.2d 1168 (1993); 54 C.J.S. *Malicious Prosecution* § 33 (2003); 52 Am.Jur.2d *Malicious Prosecution* § 62; W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 119, at 881 (5th ed.1984). Accordingly, the Superior

Court's decision to hold Awabdy to answer after a preliminary hearing would not prevent him from maintaining his § 1983 malicious prosecution claim if he is able to prove the allegations in his complaint that the criminal proceedings were initiated on the basis of the defendants' intentional and knowingly false accusations and other malicious conduct.

■■ We reject the defendants' argument that they should be shielded from liability because it was the San Bernardino County District Attorney's office—and not they—who prosecuted Awabdy. Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. *Smiddy v. Varney*, 665 F.2d 261, 266–68 (9th Cir.1981). However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *See Galbraith*, 307 F.3d at 1126–27 (holding that plaintiff's allegations that a coroner's knowingly or recklessly false statements led to his arrest and prosecution were sufficient to state a § 1983 claim); *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir.1997) (holding that a probable cause determination "that is 'tainted by the malicious actions of the government officials [involved]' does not preclude a claim against the officials involved.") (quoting *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir.1988)). *See also* 5 Witkin, Summary of Cal. Law, *Torts* § 418 (9th ed. 1998) ("One who procures a third person to insti-

tute a malicious prosecution is liable, just as if he instituted it himself."). On the basis of the allegations in his complaint, Awabdy may be able to prove that the defendants' knowingly false accusations and other similarly conspiratorial conduct were instrumental in causing the filing and prosecution of the criminal proceedings.

For similar reasons, the doctrine of collateral estoppel does not bar Awabdy from asserting that the San Bernardino County District Attorney lacked probable cause to prosecute him, notwithstanding the Superior Court's decision to hold him to answer. When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim. *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir.1994). However, collateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials. *See id.* at 290 n. 5; *Morley v. Walker*, 175 F.3d 756, 760–61 (9th Cir.1999); *McCutchen v. City of Montclair*, 73 Cal.App.4th 1138, 87 Cal. Rptr.2d 95, 101 (Cal.Ct.App.1999). Awabdy's allegations fall squarely within this exception.

Nor is Awabdy's malicious prosecution claim foreclosed because the prior criminal proceedings concluded when the Superior Court granted a motion by a deputy District Attorney to dismiss the embezzlement charge in the interests of justice. An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence. *Heck*, 512 U.S. at 484–85, 114 S.Ct. 2364; *Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393, 394–96 (1979); *Jaffe v. Stone*, 18 Cal.2d 146, 114 P.2d 335, 338–39 (1941). Similar to other terminations short of a complete trial on the merits, a dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant. *Minasian v. Sapse*, 80 Cal.App.3d 823, 145 Cal.Rptr. 829, 831–32 (1978); *Jackson v. Beckham*, 217 Cal. App.2d 264, 31 Cal.Rptr. 739, 742–43 (1963); *De LaRiva*, 61 Cal.Rptr. at 296. When such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt.

On the basis of Awabdy's complaint, as well as the state court records of which the district court took judicial notice, we cannot say with certainty that the charge was dismissed for reasons other than doubts on the part of the court or the prosecutor about the legitimacy of the charge or as to Awabdy's guilt. Accordingly, Awabdy may be able to establish that the dismissal of the prior proceedings satisfies the favorable termination requirement.

### 2. Deprivation of Constitutional Rights

The district court, citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), concluded that, even if Awabdy could establish that there was not probable cause to prosecute him, his § 1983 claims should be dismissed for another reason: his complaint does not contain any allegations that the defendants had violated his Fourth Amendment rights.

We do not interpret *Albright* as establishing a rule that Fourth Amendment violations are the only proper grounds for malicious prosecution claims under § 1983. In decisions subsequent to *Albright,* we have continued to follow our earlier precedents establishing that "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights is cognizable under § 1983." *Poppell v. City of San Diego,* 149 F.3d 951, 961 (9th Cir.1998) (citing *Usher,* 828 F.2d at 562); *see also Galbraith,* 307 F.3d at 1126–27; *Cabrera v. City of Huntington Park,* 159 F.3d 374, 382 (9th Cir.1998); *Freeman,* 68 F.3d at 1189.

■ The principle that *Albright* establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause. 510 U.S. at 268, 271, 114 S.Ct. 807 (plurality); *id.* at 275, 114 S.Ct. 807 (Scalia, J., concurring); *id.* at 277, 114 S.Ct. 807 (Ginsburg, J., concurring); *id.* at 282–83, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment and joined by Thomas, J.); *id.* at 291, 114 S.Ct. 807 (Souter, J., concurring in the judgment). In rejecting Albright's reliance on substantive due process as the basis for his malicious prosecution claim, the plurality explained: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment', not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 273, 114 S.Ct. 807 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In *Albright,* the plurality suggested that the plaintiff in that case might have set forth a proper § 1983 claim had

he argued that the state's pretrial deprivations of his personal liberty violated the Fourth Amendment. *Id.* at 271, 274–75, 114 S.Ct. 807.

In line with this reasoning, we have held, post-*Albright,* that a § 1983 malicious prosecution plaintiff must prove that the defendants acted for the purpose of depriving him of a "specific constitutional right," *Freeman,* 68 F.3d at 1189, but have not limited that right to one protected by the Fourth Amendment. Our analysis in *Poppell* does not conflict with *Albright.* Although in *Poppell* the adult business operator did not claim a Fourth Amendment violation, we determined that he stated a cognizable § 1983 claim by alleging that a zoning administrator acted maliciously and with the intent to deprive him of specific constitutional rights—"(1) freedom of assembly, (2) freedom of association, (3) freedom of speech, and (4) the right to pursue an occupation"—when she investigated and reported charges that resulted in a prosecution by the San Diego City Attorney. 149 F.3d at 961.[3]

Similar to the business operator in *Poppell,* Awabdy does not assert that he has a substantive due process right under the constitution to be free from malicious prosecution. Nor as in *Poppell* does he rely on the Fourth Amendment in his complaint. Rather, he alleges that the defendants intended to—and ultimately did—deprive him of other specific constitutional rights by conspiring to have the San Bernardino County District Attorney initiate criminal proceedings against him.

■ In particular, Awabdy contends that the defendants conspired to deprive him of: (1) his First Amendment free speech rights by unlawfully interfer-

---

**3.** Ultimately, however, we overturned a jury verdict in Poppell's favor because we concluded that there was no substantial evidence that the zoning administrator acted maliciously and with the intent to deprive him of these rights. *Id.* at 962–68.

ing with his campaign for reelection; (2) his right to equal protection under the Fourteenth Amendment by intentionally causing the District Attorney to bring an unfounded action against him because of racial animus towards Arab Americans; and (3) his Thirteenth Amendment rights by using a criminal prosecution to coerce him into repaying a debt. We hold that the district court erred in ruling, as a matter of law, that First, Thirteenth, and Fourteenth Amendment injuries cannot provide a basis for asserting a malicious prosecution claim under § 1983. We further conclude that, because Awabdy properly alleged that the defendants engaged in malicious conduct with the purpose of depriving him of his constitutional rights to free speech and equal protection, he stated a claim for malicious prosecution under § 1983 with respect to the alleged First and Fourteenth Amendment violations.

 In contrast, we affirm the district court's dismissal of Awabdy's claim that the defendants intended to deprive him of his Thirteenth Amendment rights. The Thirteenth Amendment does prohibit "peonage—a condition in which the victim is coerced by threat of legal sanction to work off a debt to a master." *United States v. Kozminski*, 487 U.S. 931, 943, 108 S.Ct.

2751, 101 L.Ed.2d 788 (1988) (citing *Clyatt v. United States*, 197 U.S. 207, 215, 218, 25 S.Ct. 429, 49 L.Ed. 726 (1905)). Here, however, it is beyond doubt that Awabdy would not be able to prove that the defendants had him prosecuted in order to coerce him to remain in the employment of the City of Adelanto until he worked off a debt. This assertion is directly contrary to Awabdy's factual allegation that the defendants were trying to end his official service to the city by defeating his reelection efforts. Nor does Awabdy claim that the defendants loaned him the funds that he was subsequently charged with embezzling. Had Awabdy been convicted of embezzling public funds, California could have fined or incarcerated him without violating the Thirteenth Amendment.[4]

### B. First and Fourteenth Amendment Violations

In addition to its erroneous dismissal of Awabdy's § 1983 malicious prosecution claim, the district court erred by overlooking Awabdy's allegations of direct constitutional violations under the First and Fourteenth Amendment. Awabdy's complaint, liberally construed, raises claims that the defendant city officials made false accusations and otherwise unlawfully conspired against him, with the result that criminal

---

**4.** Although we hold that the district court misinterpreted the circuit's law of malicious prosecution under § 1983, its error is not surprising. There is considerable confusion among the other circuits that have attempted to determine the applicable law as established by *Albright*. See *Castellano v. Fragozo*, 352 F.3d 939, 949–53 (5th Cir.2003) (collecting cases). The differences among the various approaches are often less significant than may appear, however. For example, unlike our court and the Third Circuit, *see Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir.2000), the Fourth, Fifth, and Seventh Circuits do not allow malicious prosecution claims under § 1983, even for Fourth Amendment violations. Instead, they employ the

more straight-forward approach of allowing a § 1983 action based directly on the implicated constitutional provision; to prove such a violation, the only common law elements that these circuits adopt are those that are otherwise necessary to the enforcement of the particular constitutional right at stake. *See Lambert v. Williams*, 223 F.3d 257, 260–62 (4th Cir.2000); *Castellano*, 352 F.3d at 945–55; *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir.2001); *Ineco v. City of Chicago*, 286 F.3d 994, 998–1000 (7th Cir.2002). Yet nothing in this circuit's case law prevents plaintiffs from pursuing their claims under § 1983 by using this more direct approach instead of, or in addition to, a malicious prosecution theory. *See* Section B *infra*.

proceedings were wrongfully initiated (1) in order to discourage his political activity and other protected First Amendment conduct as a citizen and an Adelanto city councilmember, and (2) on account of his Arab ethnicity in violation of his Fourteenth Amendment right to equal protection.

■ To establish that his First Amendment rights were violated, Awabdy must prove that chilling his political speech was a substantial or motivating factor in the defendants' wrongful conduct. *Sloman v. Tadlock*, 21 F.3d 1462, 1469–70 (9th Cir. 1994); *see also Karam v. City of Burbank*, 352 F.3d 1188, 1194–95 (9th Cir.2003); *Butler v. Elle*, 281 F.3d 1014, 1027–28 (9th Cir.2002). Awabdy is not merely claiming a "speculative chill due to generalized and legitimate law enforcement initiatives." *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir.1994) (internal quotation marks and citation omitted). His complaint contains specific allegations that the defendant public officials knowingly made false accusations and engaged in other wrongful, concerted conduct that resulted, as they had intended, in the institution of an unfounded criminal charge, and substantially infringed his First Amendment rights. These allegations are sufficient to state a claim under § 1983 for violation of his First Amendment rights.

In his Fourteenth Amendment claim, Awabdy alleges that the defendants violated his right to equal protection because their false accusations and other wrongful actions that led to the institution of criminal proceedings were intentionally discriminatory. According to Awabdy, the defendants wanted to "get" him because he was an Arab–American. Although he alleges that their goal was to cause the San Bernardino County District Attorney to prosecute him, he does not contend that the four city officials named as defendants violated

his rights by performing a prosecutorial function. Rather, his claim is only that the prosecutor would not have initiated the prosecution but for the false reports that the other public officials lodged because of their racial animus.

■ Awabdy's allegations should not be confused with a selective prosecution claim, for he is not claiming that the defendants prosecuted him under a facially neutral law in a discriminatory manner. *Cf. United States v. Armstrong*, 517 U.S. 456, 464–68, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Wayte v. United States*, 470 U.S. 598, 609, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Arenas–Ortiz*, 339 F.3d 1066, 1068–69 (9th Cir.2003). Indeed, the defendants did not prosecute him at all. They simply provided information, false or fraudulent as it may have been, to those charged with that responsibility. Similarly, Awabdy is not asking us "to exercise judicial power over the 'special province' of the Executive," *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480, because he is not challenging the *prosecutor's* decision to initiate criminal proceedings. Moreover, in contrast to a typical selective prosecution claim where the target of the enforcement action does not contest that there is probable cause to prosecute, Awabdy argues that the charges against him are entirely false. Accordingly, in order to prevail under § 1983 on his Fourteenth Amendment claim against the particular defendants involved, Awabdy need only prove that they purposefully caused the state to institute proceedings against him because of his race or ethnicity, and not, as in a selective prosecution case, that similarly situated members of other, usually majority, groups were treated differently. *See Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 535 n. 4 (6th Cir.2002); *Pyke v. Cuomo*, 258 F.3d 107, 109–10 (2d Cir.2001).

**1072**

 In this circuit, nothing prevents Awabdy from bringing *both* malicious prosecution and direct First and Fourteenth Amendment claims in the same § 1983 action. In *Poppell,* for instance, we analyzed the adult business operator's claim of malicious prosecution with the intent to deprive him of specific constitutional rights separately from his claim that he was prosecuted "on account of his exercise of the same rights he invoked in his malicious prosecution theory." 149 F.3d at 961. And in *Freeman,* the plaintiff's failure to prevail on her § 1983 claim of malicious prosecution did not serve to bar her claim that she was prosecuted in violation of her Fourteenth Amendment equal protection rights and in retaliation for exercising her First Amendment "associational" rights. 68 F.3d at 1185–88. Instead, as in *Poppell,* we analyzed each claim on its own merits. Accordingly, we remand to the district court with instructions to permit Awabdy to amend his complaint to state separately and specifically the various claims he intends to assert, i.e., a direct First Amendment claim, a direct Fourteenth Amendment claim, and/or a § 1983 malicious prosecution claim.

### III. STATE LAW CLAIMS

The district court construed Awabdy's complaint as setting forth supplemental claims of malicious prosecution under California law in addition to his federal claims. It declined to exercise jurisdiction over the supplemental claims because it found the federal claims subject to dismissal. Be-

cause we reverse the dismissal of the federal claims, we reverse the dismissal of the state claims as well. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,* 190 F.3d 1051, 1060–61 (9th Cir.1999). We note that Awabdy's complaint is less than clear in a number of respects, including whether he is, in fact, asserting supplemental state claims. On remand, he should be permitted to amend his complaint to state separately the state and federal claims as well as the various federal claims under § 1983.

### IV. CONCLUSION

The district court's order granting the defendants' motion to dismiss is RE-VERSED except as to Awabdy's Thirteenth Amendment claims, and the case is REMANDED for further proceedings consistent with this opinion.[5]

**5.** Awabdy also sued the City of Adelanto on the theory that it had adopted a custom of singling out for prosecution members of racial or ethnic minorities and individuals who took public positions contrary to those of the city. The district court did not address that claim specifically. Ultimately, Awabdy's claim against the city will not succeed unless he can establish that a municipal policy or custom contributed to the constitutional violation. *Gillette v. Delmore,* 979 F.2d 1342,

1346–47 (9th Cir.1992). Nevertheless, at this stage, Awabdy has pled such a claim sufficiently to preclude dismissal under Rule 12(b)(6).

